# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| **KRISTY BOROWSKI,** | ) | |
| | ) | **Civil Action No.** CV421-252 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **THE SAVANNAH COLLEGE OF ART AND DESIGN, INC.,** | ) ) ) | |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES

Now comes Plaintiff Kristy Borowski ("Plaintiff" or "Ms. Borowski"), by and through counsel, and files this her Complaint for Damages against Defendant The Savannah College of Art and Design, Inc. ("Defendant" or "SCAD"), and shows this court as follows:

## PRELIMINARY STATEMENT

1. Plaintiff seeks a remedy for Defendant's interference with Plaintiff's rights to take a leave of absence from employment and subsequent retaliatory and unlawful termination of employment in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 et seq. This is also an action brought to remedy discrimination on the basis of disability in the terms, conditions and privileges of employment in violation of the Americans With Disabilities Act of

1990, as amended, 42 U.S.C. §12101 et seq ("ADAA") for disability discrimination and for disability discrimination under 42 U.S.C. §12203(b) of the ADA which prohibits interference, coercion or intimidation of an individual for exercising rights under the ADA.

## JURISDICTION AND VENUE

2. This Court possesses subject matter jurisdiction over Plaintiff's claims because they arise under the laws of the United States. 28 U.S.C. § 1331; 29 U.S.C. § 1337; 29 U.S.C. § 2617; 42 U.S.C. § 12117(a); 29 U.S.C. § 2201; and 29 U.S.C. § 2202. Injunctive and declaratory relief and damages are sought pursuant to 42 U.S.C. § 2000e-5(f)-(g), along with monetary relief.

3. Venue is proper within this District because the unlawful practices complained of herein occurred within the Southern District of Georgia. Accordingly, venue lies in the United States District Court for the Southern District of Georgia under 28 U.S.C. § 1391(b).

4. Plaintiff filed a charge of discrimination on the basis of disability discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on September 9, 2020. The EEOC notified Plaintiff of her right to institute this action by issuance of a "Notice of Right to Sue", which was mailed to Plaintiff on June 14, 2021 (attached as Exhibit "1").

5. Plaintiff has complied fully with all administrative prerequisites.

## THE PARTIES

6. At all times relevant, Plaintiff was a citizen of the United States and a resident of Chatham County, Georgia.

7. Plaintiff is an individual formerly employed by Defendant and is therefore an employee as defined within the meaning of the FMLA, working more than 1250 hours in the twelve (12) months preceding her termination and preceding her leave request.

8. Plaintiff is a member of a protected group and had a disability, perceived disability, or record of having a disability as that term is defined under the ADAA. Plaintiff submits herself to the jurisdiction of this Court.

9. Defendant is a domestic nonprofit corporation licensed to do business in Georgia, and at all times material hereto has conducted business within this district and is subject to the jurisdiction of this court.

10. Defendant is an employer under the applicable ADAA statutes and does have and has had as many as fifteen (15) employees at any time within the current or preceding calendar year relevant to this matter under the relevant statutory provisions. 42 U.S.C. § 12111(5).

11. Defendant may be served with process by delivering a copy of the *Summons* and *Complaint* to its Registered Agent, Hannah Yi Flower, 1600 Peachtree Street NW, Atlanta, GA, 30309-2403.

## FACTS

12. Plaintiff was hired by SCAD on or about October 21, 2013, as a Financial Aid Analyst.

13. Plaintiff at all times was well qualified for the position she held at the time she was terminated.

14. Prior to requesting the leave under the FMLA and accommodation(s) under the ADAA, Plaintiff never received a formal write up, a written warning, and never received an improvement plan during her entire employment.

15. In the summer/fall of 2019, Plaintiff received an Employee Performance Evaluation and it was good.

16. The average score for Employee Performance Evaluations for the Financial Aid Processing Team is between a 3 and a 4 on a scale of 1-5.

17. Around this same time, Plaintiff had a medical episode which substantially limited her major life activities and bodily functions, including but not limited to eating, sleeping, thinking, concentrating, and interacting with others.

18. Plaintiff's medications were adjusted following the medical episode and Plaintiff made Defendant aware of the situation in case Plaintiff needed an accommodation (to leave early, come in late, or miss work).

19. Plaintiff offered medical documentation to document her serious health condition and disability and was told by her supervisor that "it's not necessary."

20. Additionally, immediately after making her supervisor aware of the flare up of her disability and serious health condition, Plaintiff met with representatives of SCAD Benefits in SCAD's human resources ("HR") office.

21. Plaintiff felt that it was important to alert HR, in addition to her supervisor, for several interrelated reasons. First, this was the first occasion during her employment at SCAD that an episode was lasting more than a few days. Second, this was the first episode that was substantially limiting her major life activities and bodily functions. Lastly, she was unsure how long of a duration the episode would last and what leave or accommodations may be available.

22. During her meeting with HR representatives, Plaintiff was advised that intermittent Family and Medical Leave Act ("FMLA") was not available because Plaintiff's need for the leave was not on a set timetable or schedule and was only available if she was required to miss every recurring Tuesday for example.

23. Plaintiff was informed by Defendant that since neither she, nor her medical provider, could predict when an episode would occur, or what accommodations, if any, were needed, the discussion ended without FMLA leave being provided and without an accommodation being approved.

24. On or about May 30, 2020, Plaintiff had an episode that required medical intervention.

25. Plaintiff was able to perform the essential functions of her position with or without accommodation.

26. Thereafter, on June 1, 2020, Plaintiff immediately communicated with Defendant for guidance regarding FMLA leave and potential accommodations regarding her serious health condition and disability.

27. Plaintiff was out of work from Monday June 1, 2020 to Friday June 5, 2020 as a result of the flare up of her disability and serious health condition.

28. Plaintiff returned to work on Monday June 8, 2020.

29. Plaintiff again reached out to HR for guidance and was again told by James Fitzgibbons that Defendant did not need any further documentation regarding her disability and serious health condition.

30. Thereafter, the following day on Tuesday June 9, 2020, Plaintiff received a communication from Defendant that they would review her accommodation request.

31. Also on Tuesday June 9, 2020, Plaintiff was informed for the first time that she needed documentation from her physician for the accommodation.

32. Plaintiff provided the requested documentation from her physician.

33. One (1) week later, on June 16, 2020, Plaintiff suffered an adverse employment action when she was terminated.

34. Plaintiff was told that that her performance for the past year had been unacceptable and she was terminated as of that moment.

35. At the time of her termination, neither Plaintiff's FMLA leave, nor Plaintiff's accommodation request were approved.

36. Defendant's supervisor exhibited animus toward disabled workers.

37. During Ms. Borowski's tenure at SCAD, she witnessed her supervisor exhibit a pattern of behavior exemplifying her prejudice against people with disabilities. For instance, during the interview process for an open position in the financial aid office, Plaintiff's supervisor stated to Plaintiff and others in the office on the Financial Aid Processing Team that even though the candidate had the necessary skills and experience, that she didn't offer her the job after the interview because the candidate had a "gimpy" hand.

38. Plaintiff's supervisor proceeded to find the applicant's Facebook account and pulled it up to show pictures and ridicule her.

39. Similarly, Plaintiff's supervisor disclosed to the Financial Aid Processing Team, that another member of the Financial Aid Technical Team and Plaintiff's coworker, was diagnosed with a disability and serious health condition and that the coworker frequently made "ridiculous" accommodation requests.

40. Plaintiff's supervisor again openly and unapologetically mocked Plaintiff's disabled coworker and the legally required accommodation process in front of Plaintiff and the rest of the Financial Aid Processing Team.

41. Defendant attempts to provide legitimate reasons for the termination, which are entirely pretextual.

42. Other similarly situated employees were treated dissimilarly.

43. The reason stated by Defendant, performance, is pretextual.

44. Defendant alleges that Plaintiff was not performing her job duties from approximately April 1, 2020 through May 26, 2020 ("time period").

45. During the time period, Plaintiff was enrolled in a professional development course (the "Course") that required an inordinate amount of time.

46. The Course was in a subject outside of Plaintiff's general or job specific course area and was an intensive 8-week course that started in March 2020 and culminated with the final examination on April 27, 2020.

47. Plaintiff reminded her supervisor on or about April 6th, 2020 that she had to work on the Course as much as possible.

48. Besides Plaintiff's daily work responsibilities, she had several weeks of the Course to catch up on before the end of the Course due to the beginning of spring quarter workload.

49. March and April are the beginning of the Financial Aid office's busiest time of the year and lasts through mid-August.

50. Spring quarter 2020 started March 30th. The first week of each quarter is busy in the Financial Aid office as the Financial Aid Processing Team is processing discrepancy reports which are manually updated. The updating is done line by line for each type of award for each quarter in which the student is enrolled. It is very time consuming and very easy to make a mistake.

51. The summer extension report is a list of everyone that has registered for summer classes (at the time the report has run) and needs to be awarded summer aid. Like discrepancy reports each line must be added manually. It is also very time consuming.

52. On April 20, 2020 the Financial Aid Processing Team were given their first summer extension report.

53. The week of April 20th was the last week of Plaintiff's Course and she had to finish all the course work and pass the quizzes and case load studies, or she could not be able to take the Certification Examination.

54. With the approval of her supervisor, Plaintiff focused on finishing the Course, and she did.

55. According to her supervisor, Plaintiff's work priorities were, current quarter, summer quarter, fall/new aid year.

56. The last day to complete the Course to test for the Certification Examination was April 27, 2020.

57. Plaintiff's supervisor acknowledged this and knew that Plaintiff would be spending time working on the Course.

58. In addition to attending the Course during this time period, Plaintiff was performing her own workload which was last names A-B (a lot of people) and she was also working another coworker's workload (which is believed to be N-R) while she was on bereavement leave from May 7, 2020 to May 26, 2020.

59. On May 21, 2020, Plaintiff sent a message to her supervisor regarding the huge workload.

60. Plaintiff's supervisor responded and said not to worry about it that "everyone is behind."

61. As Plaintiff's supervisor confirmed, during this time period, the entire Financial Aid Processing Team was behind schedule, even though they only had their own workload, and even though they were not enrolled in the Course at the same time.

62. on June 16, 2020, Plaintiff was terminated.

63. Defendant interfered with Plaintiff's FMLA and ADAA rights and retaliated against Plaintiff based on her notice of intent to take FMLA leave.

64. Plaintiff requested accommodation(s), Defendant knew and suspected that she had a disability, a perceived disability, or a record of having a disability and required accommodation(s) for said disability. However, instead of engaging in the interactive process with Plaintiff and providing accommodation(s), Defendant provided pretextual reasons and terminated her.

## CLAIMS FOR RELIEF
## COUNT I – FMLA INTERFERENCE

65. Plaintiff realleges the preceding paragraphs as if set forth fully herein.

66. Defendant interfered with Plaintiff's use of her FMLA leave based on her notice of intent to take FMLA leave.

67. Defendant failed to grant leave to Plaintiff. Said failure to grant leave to Plaintiff was illegal interference.

68. In this case, Defendant's failure to inquire further as to the need for leave was illegal interference under the FMLA.

69. After notice has been given, the regulations obligate employers to, "in all cases," inquire further of the employee to obtain necessary details of leave to be taken. 29 C.F.R. § 825.305(c).

70. Here, Defendant was on notice that Plaintiff required FMLA leave.

71. Despite being aware of Plaintiff's need for leave, Defendant did not request further information. Defendant interfered with Plaintiff's rights by terminating her during her requested FMLA leave period and/or by failing to inquire further regarding her request for leave.

72. Plaintiff would have taken available FMLA leave had Defendant not engaged in the above referenced conduct.

73. Defendant's actions as set forth above constituted interference under the FMLA and that said conduct of Defendant is actionable pursuant to 29 U.S.C. Sections 2615 and 2617. Defendant's actions were willful.

74. As a proximate result of the acts of Defendant, Plaintiff has suffered the loss of her job position including back pay, future pay, and lost fringe benefits and pension benefits. By virtue of the willful violation of the act, Plaintiff is entitled to liquidated damages. Plaintiff has also been forced to incur court costs and attorney's fees.

## COUNT II – FMLA RETALIATION

75. Plaintiff realleges the preceding paragraphs as if set forth fully herein.

76. Defendant willfully and unlawfully discharged Plaintiff and Plaintiff states that Defendant's actions in terminating her employment constituted interference, discrimination and retaliation against Plaintiff because of her exercising her rights provided for under the FMLA. Said conduct of Defendant is actionable pursuant to 29 U.S.C. Sections 2615 and 2617.

77. The proffered reasons for Plaintiff's termination are false and pretextual.

78. Plaintiff was well qualified for the position she held and the termination of Plaintiff violated the FMLA.

79. As a proximate result of the acts of Defendant, Plaintiff has suffered the loss of her job position including back pay, future pay, and lost fringe benefits and pension benefits. By virtue of the willful violation of the act, Plaintiff is entitled to liquidated damages. Plaintiff has also been forced to incur court costs and attorney's fees.

### COUNT III – DISABILITY DISCRIMINTATION IN VIOLATION OF ADA, AS AMENDED

80. Plaintiff realleges the preceding paragraphs as if set forth fully herein.

81. Plaintiff's physical impairment is a "disability" within the meaning of the ADAA because it limited one or more major life activities, including but not limited to eating, sleeping, thinking, concentrating, and interacting with others, resulting in Plaintiff being disabled.

82. Defendant was aware of Plaintiff's disability.

83. At all times relevant to this action, Plaintiff was a qualified individual with a record of or known or perceived disability as defined in the ADAA.

84. Plaintiff was able to perform all essential functions of her job with or without an accommodation.

85. Defendant regarded Plaintiff as having a disability such that she is a person with a disability within the meaning of the ADAA.

86. Plaintiff requested accommodation(s), including leave.

87. Defendant failed to engage in any interactive process with Plaintiff's request for leave thereby failing to accommodate her reasonable request for accommodation(s), even though to do so would not impose an undue hardship.

88. By refusing to accommodate Plaintiff, Defendant violated the ADAA.

89. Defendant discriminatorily terminated Plaintiff's employment because of her disability, perceived disability, or record of having a disability and said actions violate the ADAA.

90. Plaintiff's disability and/or need for reasonable accommodation(s) were determinative factors in Defendant's decision to terminate Plaintiff.

91. Defendant treated employees outside Plaintiff's protected class differently.

92. Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination under the ADAA.

93. Although Defendant purports to provide legitimate non-discriminatory reasons for the termination, the reasons are a pre-text for disability discrimination.

94. Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

95. The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her disability.

96. As a result of Defendant's discriminatory actions against Plaintiff, she has suffered lost compensation and benefits and emotional distress.

97. Pursuant to the ADAA, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADAA.

## COUNT IV – DISABILITY DISCRIMINTATION UNDER 42 U.S.C. §12203(b) FOR INTERFERENCE WITH ADA RIGHTS

98. By Defendant's actions as set forth above, Defendant has interfered with Plaintiff in exercising or because she exercised her right to request reasonable accommodations for her disabilities, including intermittent leave.

99. Plaintiff had a good faith belief that she was disabled and entitled to accommodations and Plaintiff was entitled to rights under the ADA.

100. Defendant coerced, intimidated, threatened and interfered with Plaintiff in the exercise of her right to reasonable accommodations, or on account of her having exercised her right to request accommodation under.

101. Defendant's actions violated 42 U.S.C. §12203(b) of the ADA which prohibits interference, coercion or intimidation of an individual for exercising rights under the ADA.

102. Defendant acted negligently or with reckless indifference to Plaintiff's rights by the conduct outlined above, despite the ADA's clear prohibition on interfering with, coercing, threatening or intimidating employees

for exercising their right to reasonable accommodation or for protesting discrimination on the basis of disability.

103. These actions by Defendant's actions have caused, continue to cause, and will cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

104. As a direct and proximate result of Defendant's interference with her rights, Plaintiff has suffered out of pocket losses and has been deprived of her profession, livelihood and job-related economic benefits, including income in the form of wages and other job related benefits, including health insurance, disability insurance, and life insurance benefits.

105. Moreover, Plaintiff is entitled to be reinstated to employment by Defendant and, if reinstatement is not feasible under the circumstances, Plaintiff is entitled to an award of damages for future lost wages and benefits of employment.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Honorable Court:

A. General damages for mental and emotional suffering;

B. Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval;

C. Special damages for lost wages and benefits and prejudgment interest;

D. An amount of liquidated damages equal to her damages;

E. Reasonable attorney's fees and expenses of litigation;

F.  Trial by jury as to all issues;

G.  Prejudgment interest at the rate allowed by law;

H.  Declaratory relief to the effect Defendant violated Plaintiff's rights;

I.  Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein;

J.  All other relief to which she may be entitled.

Respectfully submitted the 9th day of September, 2021.

**CHARLES HERMAN LAW**

/s/ Charles Herman
Charles Herman
Georgia Bar No. 142852
*Attorney for Kristy Borowski*

7 East Congress Street, Suite 611A
Savannah, Georgia 31401
(912) 244-3999
(912) 257-7301 Facsimile
charles@charleshermanlaw.com

EEOC Form 161 (11/2020)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: **Kristy Borowski**
5101 Walden Park Dr
Savannah, GA 31410

From: **Savannah Local Office**
7391 Hodgson Memorial Drive
Suite 200
Savannah, GA 31406

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 415-2021-00057 | C. A. Harris, Investigator | (912) 358-2789 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Omayra Padilla*
Digitally signed by Omayra Padilla
Date: 2021.06.14 15:41:32 -04'00'

6/14/2021

Enclosures(s)

Omayra Padilla,
Director

*(Date Issued)*

cc:
Hannah Flower
VP for International Student Services & Legal Affairs
SCAD
1600 PEACHTREE ST NW
Atlanta, GA 30309

Charles Herman, Esq.
CHARLES HERMAN LAW
7 East Congress Street Suite 611A
Savannah, GA 31401

Joseph M. English
Taylor English Duma LLP
1600 PARKWOOD CIR SE
STE 200
Atlanta, GA 30339